**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NICKOLA CUNHA, | : | 3:23-cv-00037-VAB |
| *Plaintiff*, | : | |
| v. | : | |
| THOMAS MOUKAWSHER, | : | |
| *Defendant*. | : | AUGUST 11, 2023 |

## Defendant's Memorandum in Support of His Motion for Rule 11 and Inherent Authority Sanctions

Plaintiff was an experienced attorney. In a state court proceeding, Defendant Connecticut Superior Court Judge Thomas Moukawsher found Plaintiff to have "repeatedly pressed empty and malicious claims that" another Connecticut Superior Court Judge "favored Jews, protected pedophiles, and discriminated against the disabled." *Ambrose v. Ambrose*, 2022 Conn. Super. LEXIS 131, at *1 (Jan. 25, 2022). Defendant found that Plaintiff's "offenses were particularly rank"; "[t]hey not only involved a fraud on the court, but a scurrilous assault on the integrity of a judge" and were "aggravated by" their context and by Plaintiff's "behavior at the hearing on potential punishment." *Id*. Defendant disbarred Plaintiff as a result. Connecticut law allows Plaintiff to seek appellate review of that decision. Plaintiff has done so, and her writ of error is pending before the Connecticut Appellate Court.

"[U]ndeterred by the maxim that among the proper procedures for a litigant wishing to challenge a judge's rulings[,] [s]uing the judge is not one of them," Plaintiff brought this federal law suit against Defendant in both his official and individual capacities seeking compensatory and punitive damages. *Madison v. Blount*, 2021 U.S. Dist. LEXIS 144734, at *16 (E.D. Mich. Aug. 3, 2021). The Second Circuit and other courts addressing claims similar to Plaintiff's have made clear

that the objectively reasonable pre-filing inquiry Rule 11 requires would have revealed that the Eleventh Amendment and absolute judicial immunity barred Plaintiff's claims in their entirety. That alone would support sanctions. But soon after Plaintiff filed this action, Defendant provided Plaintiff with a detailed Safe Harbor Letter and Contingent Motion[1] that explicitly informed Plaintiff of the myriad defects in her claims, with citations to binding authority. Despite that and Defendant's multiple respectful requests that Plaintiff refrain from pursuing this frivolous action to avoid the resulting unnecessary costs in time and resources to Plaintiff, this Court, and Defendant, Plaintiff has continued to pursue her claims. Sanctions are necessary to deter both repetition of such conduct by Plaintiff and comparable conduct by other attorneys subject to discipline.

## Procedural Background

### I.     The Background of this Action

Plaintiff is "an attorney admitted to the state bar in 1999." *Compl.*, ¶ 1. Defendant ordered Plaintiff disbarred on January 25, 2022. *See id.* at ¶ 2; *see also Ambrose v. Ambrose*, 2022 Conn. Super. LEXIS 131 (Jan. 25, 2022) (the disbarment decision). Plaintiff sought appellate review of that decision via a writ of error to the Connecticut Appellate Court. *See Compl.*, ¶ 16. Plaintiff was initially represented by counsel in that writ of error but is now self-represented. That writ of error has been fully briefed and is pending.

---

[1] Undersigned counsel will refer to the Safe Harbor Letter and the Contingent Motion for Sanctions enclosed with that letter collectively as "the Safe Harbor Materials." The Safe Harbor Materials are at A-2 to A-11 of the Appendix to this Motion.

Plaintiff filed this action on January 9, 2023 and pursues official and individual capacity claims (ECF No. 1). That day, Plaintiff e-mailed her Complaint and what purported to be a Waiver of Service form to a Connecticut Superior Court Case Flow Coordinator and undersigned counsel (who represents Defendant in Plaintiff's writ of error).

## II.   The January 27, 2023 Safe Harbor Letter and Contingent Motion for Sanctions

On January 27, 2023, undersigned counsel sent Plaintiff a Safe Harbor Letter Pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure ("*Safe Harbor Letter*") (A-2). In that letter, undersigned counsel advised Plaintiff that her e-mails did not constitute proper service but indicated that undersigned counsel anticipated accepting individual capacity service if and when Plaintiff properly sent a valid Waiver of Service form. *Safe Harbor Letter*, pp. 1-2 (A-2).

However, undersigned counsel advised Plaintiff that Plaintiff's "Complaint violates Rule 11(b) of the Federal Rules of Civil Procedure for the reasons set forth in the enclosed contingent motion for sanctions." *Id.* at 2 (A-3); *see also Contingent Motion for Rule 11 and Inherent Authority Sanctions*, pp. 1-5 (A-6) ("*Contingent Motion*"). In the Safe Harbor Letter, undersigned counsel informed Plaintiff that "[t]hese materials are intended to give you the opportunity to withdraw your Complaint within 21 days." *Safe Harbor Letter*, p. 2. If Plaintiff did so, undersigned counsel would "not file the enclosed motion and a supporting memorandum with the Court and w[ould] not seek to recover the reasonable expenses incurred for the motion." *Id.* "In addition, a withdrawal at this point will save you the time and

expense associated with service," given that official capacity service cannot be waived. *Id*. Undersigned counsel closed the Safe Harbor Letter by saying

> I understand that you are upset by your disbarment. The pending writ of error in which you are represented by counsel[2] will give you an opportunity to seek review of Defendant's decision through the proper channels. I respectfully hope you will withdraw this separate and improper action to save yourself, the Court, and the State the time and resources that will be needlessly consumed if you do not.

*Safe Harbor Letter*, p. 4 (A-5). The 21-day deadline for Plaintiff to take curative action was on or about February 17, 2023.

## III.   Plaintiff's Response to the Safe Harbor Materials

On February 23, 2023, Plaintiff e-mailed undersigned counsel saying that she was "responding to the threat you sent me on January 27, 2023 with respect to the Federal Lawsuit I am pursuing against Judge Moukawsher." *E-Mail Exchange re: Safe Harbor Materials* (A-15). Plaintiff said "[a]s I am sure you are very well aware, your threat to seek sanctions against me unless I withdraw my action, which you refer to as frivolous is a direct violation of Rules 3.2, 3.4, 4.3, 4.4." *Id*. (A-15).

Undersigned counsel responded by e-mail on March 1, 2023. *See id*. (A-14). Undersigned counsel informed Plaintiff that the safe harbor period had passed and it was undersigned counsel's understanding based on Plaintiff's e-mail that Plaintiff had "decided to proceed notwithstanding the" issues raised in the Safe Harbor

---

[2] Plaintiff was represented on her writ of error at that time by the law firm of Pattis and Smith. Before contacting Plaintiff regarding this litigation, undersigned counsel contacted Plaintiff's then-counsel in the writ of error and confirmed that they did not represent her in this matter. Plaintiff later appeared in the writ of error in lieu of her counsel and her former counsel moved to withdraw representing that "the attorney-client relationship has broken down and" Plaintiff had "discharged counsel." *Motion to Withdraw* (A-12).

Materials. *Id*. (A-14). "As a result," undersigned counsel would "unfortunately need to begin next steps." *Id*. (A-14).

To the extent Plaintiff accused undersigned counsel of being "very well aware" that his Safe Harbor Materials were "a direct violation" of the Rules of Professional Conduct, undersigned counsel informed Plaintiff that he had researched the issue (both before and after receiving Plaintiff's response) and saw no credible basis for Plaintiff's assertion. *Id*. (A-14). "That said," undersigned counsel informed Plaintiff that he takes his "obligation under the Rules of Professional Conduct seriously; if you have detailed argument and authority for your assertion that my safe harbor letter violated the Rules, please provide it as soon as possible (within no more than 7 days) and I will give it due consideration." *Id*. (A-14).

Seven days from undersigned counsel's e-mail was March 8, 2023. Plaintiff provided no analysis to support her accusation by that date. Nor has Plaintiff provided supporting analysis in the over five months since, even though Plaintiff and undersigned counsel had detailed e-mail exchanges about another legal issue. *See E-Mail Exchange re: Service* (A-17).[3]

To the extent Plaintiff claimed to have "researched" the claims made and disagreed with Defendant's position, undersigned counsel responded that it was not clear what claims Plaintiff referenced. *Id*. (A-15). "[T]o the extent" Plaintiff had

---

[3] In closing that e-mail exchange, undersigned counsel again told Plaintiff that he "hope[d] that" she would "refrain from consuming" her, "the Court's, and the state's time and resources on this matter and instead focus [her] efforts on the proper method of seeking review of [her] disbarment." *E-Mail Exchange re: Service* (A-19).

"arguments supported by legal authority that" she "believe[d] show[ed] that anything" that undersigned counsel was "doing is incorrect," undersigned counsel expressly told Plaintiff that he was "open to considering the arguments and authority you provide." *Id*. (A-15). As with Plaintiff's accusations that undersigned counsel violated the Rules of Professional Conduct, Plaintiff did not respond directly to undersigned counsel's invitation to correct any errors in his analysis—either in the Safe Harbor Materials or otherwise—before Defendant filed his Motion to Dismiss and supporting materials.

Undersigned counsel closed his responsive e-mail by telling Plaintiff he "would prefer not to have to proceed with a Rule 11 motion but may be compelled to if you insist on pursuing this improper action." *Id*. (A-15). Undersigned counsel again expressed understanding that Plaintiff was upset by her disbarment but indicated that Plaintiff's pending writ of error—rather than this federal lawsuit— was the proper means to seek review. *See id*. (A-15).

## IV. The Proceedings in this Court Since the Safe Harbor Materials

Although Plaintiff has not filed anything on the docket reflecting service on Defendant, Plaintiff served her Complaint on April 3, 2023. On April 24, 2023, Defendant timely filed *inter alia* a Motion to Dismiss and supporting materials (ECF No. 12). Plaintiff's response deadline was May 15, 2023 (*see, e.g.*, Docket Entry 12). Plaintiff did not respond by that deadline. Instead, Plaintiff filed a Memorandum in Opposition on May 31, 2023, sixteen days late (ECF No. 18) ("*PO*"). Defendant timely replied (ECF No. 19). The details of Defendant's Reply will be

discussed below to the extent they bear on this Motion. Defendant's Motion to Dismiss remains pending.

## Argument

### I.    The Standard Applicable to this Motion

This Motion is pursuant to both Rule 11 of the Federal Rules of Civil Procedure and this Court's inherent authority. "'A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.'" *Walker v. Accenture PLC*, 511 F. Sup. 3d 169, 202 (D. Conn. 2020) (Bolden, J.) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)). "Rule 11 requires that the conduct in question be objectively unreasonable and therefore does not require a finding of subjective bad faith." *Id*. (citing *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013)).

"Rule 11 requires that the party moving for sanctions give the party notice of the motion for sanctions before filing a motion with the Court." *Id*. at 203 (citing Fed. R. Civ. P. 11(c)). Generally, service of a letter with a contingent motion is preferred but less formal notice is sufficient under some circumstances. *See id*. Courts may—and often do—defer consideration of Rule 11 sanctions motions until after deciding a dispositive motion. *See Walker*, 511 F. Supp. 3d at 204. The Second Circuit has "rejected the notion that the imposition of sanctions pursuant to Rule 11

requires an evidentiary hearing." *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989). Rather, "'[t]he court must to the extent possible limit the scope of sanction proceedings to the record.'" *Id.* (quoting Fed. R. Civ. P. 11 Advisory Committee Note).

In addition to the authority this Court has under Rule 11, this Court has the inherent authority to, "'in its discretion, impose sanctions against litigants who abuse the judicial process.'" *Errato v. American Express Co.*, 2022 U.S. Dist. LEXIS 226609, at *21 (D. Conn. Dec. 16, 2022) (Bolden, J.) (quoting *Shafii v. Brit. Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). Those sanctions can be monetary or non-monetary, and can include dismissal of the action with prejudice. *See, e.g.*, *Colella v. Republic of Arg.*, 2021 U.S. App. LEXIS 36885, at *5 (2d Cir. Dec. 14, 2021) (Summary Order) (affirming a district court's dismissal of an action with prejudice as a sanction under the court's inherent authority).

## II.    Plaintiff's Conduct Warrants Rule 11 Sanctions

Rule 11 establishes that "an attorney may not present a pleading that asserts claims the attorney knows to be frivolous." *LCS Group, LLC v. Shire Development LLC*, 2022 U.S. App. LEXIS 11212, at *12 (2d Cir. Apr. 26, 2022) (Summary Order). The Rule imposes an objective standard; it "requires that the conduct in question be objectively unreasonable and therefore does not require a finding of subjective bad faith." *Walker v. Accenture PLC*, 511 F. Sup. 3d 169, 202 (D. Conn. 2020) (Bolden, J.) (citing *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013)). As undersigned counsel expressly advised Plaintiff in the Safe Harbor Letter, "Rule

11(b) applies to" Plaintiff "even though [she is] proceeding in [her] self-represented capacity." *Safe Harbor Letter*, p. (A-3) (citing Fed. R. Civ. P. 11(b) and pointing out that it explicitly applies to "an attorney or unrepresented party"). "Indeed, the Second Circuit has indicated that '[w]hen the [*pro se*] litigant is an attorney sanctions are particularly appropriate.'" *Id.* (quoting *Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986)).

Sanctions "'are particularly appropriate'" here. *See id.* (quoting *Fox*, 794 F.3d at 38). Plaintiff brought this suit against the Superior Court Judge who ordered her disbarment after finding and holding that Plaintiff violated several Rules of Professional Conduct. *See Ambrose v. Ambrose*, 2022 Conn. Super. LEXIS 131 (Jan. 25, 2022) (the disbarment decision). Plaintiff had the ability to seek appellate review of that decision, and she has done so. Several lines of authority establish that Plaintiff had no basis to bring this separate federal action against the Judge who ruled against her.

Plaintiff's decisions to not only bring this action but to continue to pursue it after repeatedly being advised that it was improper support a conclusion that this litigation was brought to punish and harass Defendant. "The impact of the wrongful initiation of litigation calls to mind Judge Learned Hand's oft-quoted dictum that a lawsuit should be 'dreaded . . . beyond almost anything else short of sickness and death.'" *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 177 (2d Cir. 1999) (quoting Learned Hand, *The Deficiencies of Trials to Reach the Heart of the Matter*, 3 Ass'n of the Bar of the City of New York, Lectures on

Legal Topics 89, 105 (1926), quoted in *Schmieder v. Hall*, 545 F.2d 768, 768 (2d Cir. 1976), *cert. denied*, 430 U.S. 955 (1977)). That impact arises because "federal courts exercise considerable discretion and great power. . . . When a plaintiff invokes those powers in a civil case, it puts machinery in gear that can be powerful, intimidating, and often expensive." *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). "Those powers and machinery can be abused by litigants;" Rule 11 "seeks to ensure that those powers and machinery are engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *Id.* at 883-84. This action has no reasonable basis in fact or law and the record indicates that it was asserted for an improper purpose. Therefore, this Court should grant this Motion.

### A. An Objectively Reasonable Pre-Filing Inquiry Would Have Prevented the Filing of this Action

"'Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *Whitley v. City of Mount Vernon*, 2022 U.S. Dist. LEXIS 221705, at *23-24 (S.D.N.Y. Dec. 8, 2022) (quoting *Eastway Construction Corp. v. New York*, 762 F.2d 243, 253 (2d Cir. 1985)). Even before undersigned counsel sent Plaintiff the Safe Harbor Materials, it should have been clear to Plaintiff based on the required objectively reasonable inquiry that her claims were barred for the several reasons set forth in those materials. *See id*.

As will be discussed in detail below, even a "'minimal amount of inquiry'" would have revealed to an objectively reasonable person that Plaintiff's claims could

not properly be pursued in this Court. *See id.* at \*24 (quoting *Fischer v. Samuel Montagu, Inc.*, 125 F.R.D. 391, 395 (S.D.N.Y. 1989)). The Eleventh Amendment principles Defendant relied on have been "definitively settled by the Supreme Court since . . . 1945." *Gollomp v. Spitzer*, 568 F.3d 355, 367 n.10 (2d Cir. 2009) (quotation marks omitted). Given that, "basic research into suits against" state officials in their official capacities seeking damages "would have revealed that such actions are barred by the Eleventh Amendment." *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 264 (7th Cir. 1999).[4]

In addition, absolute judicial immunity has been definitively settled in the relevant respects since the late 1800s[5], "is one of the strongest immunities in our system of justice," and in granting Rule 11 sanctions a court found that "[a]ny reasonably competent attorney is well aware of the strength and breadth of judicial immunity, particularly when the claim is based wholly on decisions the judicial officer made on the merits of a claim before him or her." *Overcash v. Shelnutt*, 2017

---

[4] In addressing whether Rule 11 sanctions were warranted against an attorney that brought official capacity claims that the Eleventh Amendment barred, "[a]s an experiment," a court "directed one of [its] legal interns, a third-year law student, to conduct appropriate legal research in order to determine whether or not the challenged § 1983 claims are valid." *Mendez v. Draham*, 182 F. Supp. 2d 430, 434 (D.N.J. 2002). That intern "needed only seventeen minutes" to confirm "what every responsible practitioner in this field already knows: they are not." *Id.* (citing 42 U.S.C. § 1983 and *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70, 71 (1989)); *see also Miles v. Georgia Dept. of Revenue*, 143 F.R.D. 302, 304 (S.D. Ga. 1992) (granting Rule 11 sanctions based on an apparently insufficient pre-filing inquiry where "minimal research would have revealed" that the Eleventh Amendment barred the plaintiff's claims).

[5] *See, e.g.*, *Bradley v. Fisher*, 80 U.S. 335 (1871) (one of the earliest cases discussing the doctrine of absolute judicial immunity, holding that a Judge was immune from claims resulting from a disbarment).

U.S. Dist. LEXIS 222810, at *9 (M.D. Fla. Aug. 10, 2017), *aff'd*, 753 F. App'x 741 (11th Cir. 2018) (Unpublished). Plaintiff's decision to bring this suit in the face of those clear bars without any apparent basis for avoiding them alone warrants sanctions. *See, e.g.*, *Whitman v. Boats by George, Inc.*, 1992 U.S. Dist. LEXIS 3222, at *14-18 (N.D.N.Y. Mar. 13, 1992) (granting the state defendants Rule 11 sanctions "on the grounds that [*inter alia*] upon reasonable inquiry an attorney would have known . . . that the Eleventh Amendment bars a federal district court from exercising jurisdiction over a State" before the 1993 amendments to Rule 11 added the safe harbor requirement). Indeed, the Second Circuit has affirmed Rule 11 sanctions where the attorney subject to sanctions had far more of an argument than Plaintiff has made—or could credibly make—here. *Compare International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391-93 (2d Cir. 1989) (opinion of the Court affirming an award of sanctions notwithstanding the sanctioned attorney's argument that his position had support), *with id.* at 393-95 (Pratt, J., dissenting) (dissenting from the award of sanctions, concluding that the sanctioned attorney "asserted a plausible view of the law in a complicated and as yet unsettled area of diversity jurisdiction").

### B. Even if a Reasonable Pre-Filing Inquiry Could Somehow Have Left Any Doubt that this Action is Frivolous, the Safe Harbor Materials Made it Unreasonable for Plaintiff to Continue to Pursue this Action

Even if Plaintiff could credibly argue that an objectively reasonable inquiry left her unaware that her claims were frivolous (she cannot), the Safe Harbor Materials would have made clear to any objectively reasonable person that there

was no legal or factual basis for continuing to pursue this action. The Contingent Motion listed seven separate reasons why Plaintiff's Complaint violates Rule 11(b) (A-6). For example, binding precedent establishes both that the Eleventh Amendment bars Plaintiff's official capacity claims for damages and that absolute judicial immunity bars Plaintiff's individual capacity claims for damages. *See Contingent Motion*, ¶¶ 4(a), (f) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) and *Bliven v. Hunt*, 579 F.3d 204, 206-07 (2d Cir. 2009)). Taken together, those arguments barred Plaintiff's Complaint as pleaded in its entirety.

That required Plaintiff to take corrective action within the safe harbor period. She declined to do so. As a result, undersigned counsel was compelled to draft and file a Motion to Dismiss and supporting materials (*see* ECF Nos. 12, 13, and 14). Undersigned counsel delayed filing this Motion for Sanctions in the hope that either Plaintiff would withdraw this action after reviewing Defendant's Motion to Dismiss or that Plaintiff's Objection to the Motion to Dismiss[6] would make arguments that were within the bounds of zealous advocacy (if ultimately doomed to fail).

Neither of those things came to pass. Despite ample time and opportunity to withdraw (and repeated respectful requests not to waste everyone's time and resources, *see* A-3, 15, and 19), Plaintiff chose first to serve her Complaint and then to continue to pursue it even after receiving Defendant's Motion to Dismiss and supporting materials. That warrants sanctions.

---

[6] *See Plaintiff's Objection and Memorandum of Law in Opposition to Defendant's Motion to Dismiss* (ECF No. 18) ("*PO*").

Plaintiff's Objection to Defendant's Motion to Dismiss offers no basis to conclude that her "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). As discussed above, taken together the Eleventh Amendment principles discussed in *Graham* and the absolute judicial immunity principles discussed in *Bliven* foreclosed any non-frivolous argument that Plaintiff's Complaint could avoid dismissal under existing law. Plaintiff made no effort to distinguish either one of those decisions—she cited *Graham* only for a general proposition regarding the nature of individual capacity suits and did not cite *Bliven* at all. *PO*, p. 6; *see, e.g.*, *Smith v. Blue Cross & Blue Shield United*, 959 F.2d 655, 660 (7th Cir. 1992) (affirming a district court's award of Rule 11 sanctions where the defendant's motion to dismiss mentioned controlling authority and the attorney "did not mention" that authority "in his brief in opposition to the defendants' motion to dismiss, let alone make a good faith argument for a modification or reversal of" that authority).

Nor did Plaintiff candidly acknowledge that existing law bars her claims and make a coherent argument that the law should be changed. This Court will "search in vain for any principled argument advanced by" Plaintiff in her materials "to reverse or modify" any of the controlling authority at issue. *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989). That weighs heavily in favor of sanctions—"[a]lthough litigants are not required to articulate their arguments for legal change, they fail to do so at the risk that a court may be

unable to supply one *sua sponte*." *Gurary v. Winehouse*, 235 F.3d 792, 799-800 (2d Cir. 2000) (internal citation to and quotation of the Advisory Committee Notes to the 1993 Amendments to Rule 11 omitted). Defendants are aware of no credible argument for legal change this Court could supply on Plaintiff's behalf, even if this Court were inclined to do so. *See Defendant's Reply Memorandum in Support of His Motion to Dismiss*, pp. 4-7 (ECF No. 19) ("*RIS MTD*") (replying to Plaintiff's Eleventh Amendment and absolute immunity arguments).[7] Therefore, sanctions are appropriate.

---

[7] Plaintiff's arguments are addressed in detail in Defendant's Reply and Defendant will not repeat all the reasons why Plaintiff's claims are frivolous. The gravamen of Plaintiff's arguments is that 42 U.S.C. § 1983 abrogates Eleventh Amendment immunity and that Plaintiff pled—and properly could plead—claims under *Ex parte Young. See PO*, pp. 2-7. But this Court recently (and correctly) recognized that "'it is beyond dispute that Congress's enactment of § 1983 did not abrogate Eleventh Amendment immunity from federal court lawsuits.'" *RIS MTD*, pp. 4-5 (quoting *Campbell v. City of Waterbury*, 585 F. Sup. 3d 194, 202 (D. Conn. 2022) (Meyer, J.) (citing *Salu v. Miranda*, 830 Fed. App'x 341, 347 (2d Cir. 2020), which—in turn—was citing *Quern v. Jordan*, 440 U.S. 332, 338-45 (1979)); *see also Collins v. Daniels*, 916 F.3d 1302, 1321 (10th Cir. 2019) (affirming an award of Rule 11 sanctions where the plaintiffs brought claims against immune defendants, and noting that "[m]ost glaringly," the plaintiffs—like Plaintiff here—incorrectly argued that § 1983 abrogated sovereign immunity). And Plaintiff's Complaint—properly read—does not demand non-monetary relief. *See Defendant's Memorandum in Support of His Motion to Dismiss*, p. 7 n.1 (ECF No. 12-1) ("*MIS MTD*") (citing cases for the proposition that a generic prayer for relief like Plaintiff's fails to trigger *Ex Parte Young*). Even if it did, the text of 42 U.S.C. § 1983 establishes that Plaintiff cannot get injunctive relief here given that she has—and has invoked—the ability to get review through the state appellate process. *See RIS MTD*, pp. 7-9.

1.  **The Second Circuit Has Made Clear that Plaintiff's Continued Pursuit of her Claims After Being Made Aware that the Eleventh Amendment Bars them Alone Warrants Sanctions**

This Court will be "well within its discretion" if it grants Defendant's Motion "to compensate . . . for the waste of the court's and counsel's time" that has resulted because Plaintiff has proceeded contrary to binding precedent with "no basis whatsoever" to credibly argue that the Supreme Court or the Second Circuit "might read or change the" immunity law in "a way that rendered it inapplicable to" Plaintiff's claims. *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). The Second Circuit and other courts have held that sanctions are appropriate where—as here—a plaintiff continues to sue in the face of a clear Eleventh Amendment immunity bar. *See, e.g.*, *Gollomp v. Spitzer*, 568 F.3d 355, 358 (2d Cir. 2009).

*Gollomp* is instructive. There, the Second Circuit affirmed sanctions against an attorney who brought claims against *inter alia* the State of New York and the New York State Unified Court System that were barred by the Eleventh Amendment. In so doing, the Second Circuit discussed the Eleventh Amendment in detail and quoted with approval a district court decision that found that "Eleventh Amendment immunity is not a mercurial area of law, but has been definitively settled by the Supreme Court since 1890 with respect to actions against the state itself, . . . and 1945 with respect to actions against state agencies or state officials named in their official capacity." *Gollomp*, 568 F.3d at 367 n.10 (quotation marks omitted). The relevant principles have not changed since 2009. *See, e.g.*, *Rogers v. Lamont*, 2023 U.S. Dist. LEXIS 87139, at *13-14 (D. Conn. May 18, 2023) (Williams,

J.) ("It is well settled that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits brought by private citizens against the state, any state government entities, and any state government officials in their official capacities.").

Plaintiff's continued pursuit of her official capacity damages claims after undersigned counsel explicitly advised her that the Eleventh Amendment bars them—first in the Safe Harbor Materials and later in Defendant's Motion to Dismiss and supporting materials—alone warrants sanctions. *See, e.g.*, *Gollomp*, 568 F.3d at 368-74 (affirming an award of sanctions under 28 U.S.C. § 1927 where the plaintiff *inter alia* repeatedly made claims that were barred by the Eleventh Amendment). Indeed, the relevant standard under Rule 11 is significantly less onerous than the standard under 28 U.S.C. § 1927, which was the basis for the sanctions the Second Circuit affirmed in *Gollomp*. *See id.* "Unlike Rule 11, which imposes an objective standard, § 1927 'requires a clear showing of bad faith.'" *Balderramo v. Go New York Tours Inc.*, 2023 U.S. Dist. LEXIS 57080, at *23 (S.D.N.Y. Mar. 31, 2023) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). This Court can—and should—award sanctions here; it was not objectively reasonable for Plaintiff to continue to pursue her claims after Defendant explicitly and repeatedly advised her in writing of the clear and long-established Eleventh Amendment bar with citation to binding authority. *See, e.g.*, *Whitman v. Boats by George, Inc.*, 91-CV-729, 1992 U.S. Dist. LEXIS 3222, at *14-18 (N.D.N.Y. Mar. 13, 1992) (granting the state defendants Rule 11 sanctions "on the grounds that [*inter*

*alia*] upon reasonable inquiry an attorney would have known . . . that the Eleventh Amendment bars a federal district court from exercising jurisdiction over a State").[8]

## 2. Plaintiff's Continued Pursuit of Claims that Absolute Judicial Immunity Bars Further Supports Sanctions

The Eleventh Amendment alone would support sanctions in this case. *See Gollomp*, 568 F.3d at 374 (affirming a district court's grant of sanctions against an attorney whose claims were barred by the Eleventh Amendment). But absolute judicial immunity provides substantial additional support. "[T]his is precisely the type of litigation that the doctrine of judicial immunity was intended to address: judges 'should not have to fear that unsatisfied litigants may hound [them] with litigation charging malice or corruption'" when those litigants are "unsuccessful." *Overcash v. Shelnutt*, 753 F. App'x 741, 743 (11th Cir. 2018) (Unpublished) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)) (affirming a district court's imposition of sanctions on an attorney who pursued claims barred by judicial immunity). "Judicial immunity is one of the strongest immunities in our system of justice" and "[a]ny reasonably competent attorney is well aware of the strength and breadth of judicial immunity, particularly when the claim is based wholly on decisions the

---

[8] *See also Lauser v. City College of San Francisco*, 359 F. App'x 755, 757-58 (9th Cir. 2009) (Unpublished) (affirming a district court's award of Rule 11 sanctions in the amount of $14,774.79 where the plaintiff pursued claims that the Eleventh Amendment barred even after "[o]pposing counsel provided" the plaintiff "specific statutory cites and case law" showing that plaintiff's claims were barred); *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 264-65 (7th Cir. 1999) (affirming a district court's grant of Rule 11 sanctions against an attorney who failed to make a reasonable pre-filing inquiry and continued to pursue claims barred by the Eleventh Amendment after the defendant advised him of the issue in its safe harbor materials).

judicial officer made on the merits of a claim before him or her." *Overcash v. Shelnutt*, 2017 U.S. Dist. LEXIS 222810, at *9 (M.D. Fla. Aug. 10, 2017), *aff'd*, 753 F. App'x 741 (11th Cir. 2018) (Unpublished). As a result, courts both within and outside this Circuit have ordered Rule 11 sanctions when a party pursued claims that absolute judicial immunity barred.[9]

*Bletas* is instructive. There (as here), the *pro se* plaintiffs—who included an attorney admitted in Greece—accused a Judge (former United States District Judge Peter Dorsey) of criminal misconduct based on conclusory statements unsupported by facts. *Compare Bletas*, 2011 U.S. Dist. LEXIS 133132 at *16, *with Compl.*, ¶ 4 (accusing Defendant of "criminal mischief under 18 USC [sic] §242" with no facts

---

[9] *See Wik v. Kunego*, 2013 U.S. Dist. LEXIS 163902, at *1 (W.D.N.Y. July 15, 2013) (granting Rule 11 sanctions against an apparently non-attorney *pro se* plaintiff who sought reconsideration of a decision dismissing his claims on absolute judicial immunity grounds); *Bletas v. Deluca*, 2011 U.S. Dist. LEXIS 133132, at **31-49 (S.D.N.Y. Nov. 14, 2011); *Polur v. Murphy*, 1995 U.S. Dist. LEXIS 5143, at *13 (S.D.N.Y. Apr. 10, 1995); *Fariello v. Campbell*, 860 F. Supp. 54, 71 (E.D.N.Y. 1994); *Collins v. Unified Court System of New York*, 1991 U.S. Dist. LEXIS 8521, at *2 (N.D.N.Y. June 14, 1991), *aff'd*, 962 F.3d 3 (2d Cir. 1992) (Table Op.) (granting Rule 11 sanctions against a non-attorney *pro se* plaintiff whose claims were barred by absolute judicial immunity, among other things); *see also Collins v. Daniels*, 916 F.3d 1302, 1320-23 (10th Cir. 2019) (affirming an award of Rule 11 sanctions against a plaintiff because *inter alia* the defendants were "protected by well-established immunity doctrines," including sovereign immunity and judicial immunity); *Collie v. Kendall*, 2000 U.S. App. LEXIS 40688, at **1-7 (5th Cir. June 9, 2000) (Per Curiam) (Unpublished) (affirming an award of Rule 11 sanctions against a *pro se* attorney who was challenging a disciplinary ruling by federal judges, reasoning *inter alia* that the plaintiff's "argument against judicial immunity against damages actions amounted to nothing more than an argument that long-standing precedent was wrong and should be changed," which was not enough to avoid sanctions); *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 453 (E.D. Mich. 2006); *Bullard v. Downs*, 2005 U.S. Dist. LEXIS 57901, at *11 (N.D. Ga. Apr. 22, 2005), *aff'd*, 161 Fed. Appx. 886 (11th Cir.), *reh'g den.*, 179 Fed. Appx. 1 (11th Cir. 2006).

that support the accusation). The court granted Judge Dorsey's motion to dismiss on judicial immunity grounds. *See id.* at **17-18. Non-judicial defendants moved for Rule 11 sanctions, arguing *inter alia* both that "judicial . . . immunity" is "so obvious and well-established under existing law that plaintiffs' complete disregard for these principles" merited "a finding of frivolousness" and that the "plaintiffs' lawsuit was merely an attempt to achieve improper purposes, including the recusal of Judge Dorsey." *Id.* at *33. The court agreed and ordered sanctions. The court reasoned that by accusing the Judge of criminal conduct, the "plaintiffs accumulated three actionable strikes." *Id.* at *42. First, the criminal statute at issue did not confer a private cause of action. *See id.* Second, as a "straightforward matter of law" judicial immunity barred "any claims against Judge Dorsey . . . for allegedly accepting bribes." *Id.* And third, the plaintiffs offered "no factual basis to support an inference" that there was criminal conduct. *See id.* The plaintiffs' persistence in repeating their allegations supported a finding of improper purpose. *See id.*

The same is true here—Plaintiff's efforts to punish the Judge who ruled against her and potentially impact that Judge's rulings in a related proceeding "must be deterred with an appropriate sanction" to send a message to both Plaintiff and to other attorneys who may be tempted to abuse the system. *Id.* at *44 (citing *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985)); *cf. Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (Table Op.) (finding that "Rule 11's deterrence value is particularly important in the RICO context, as the commencement of a civil RICO action has an almost inevitable

stigmatizing effect on those named as defendants." (quotation marks omitted)). Given that Plaintiff is involved in related litigation involving Defendant, an award of attorney's fees is necessary; Plaintiff "must be made to understand that not only is" it "unacceptable" for her to abuse the system for improper purposes "but also that [Defendant and the state] will not be required to expend resources to subject plaintiff['s] conduct to judicial scrutiny." *Bletas*, 2011 U.S. Dist. LEXIS 133132 at *48.[10]

    *Kircher* is also instructive. There—as here—a plaintiff brought suit against state judicial defendants based on rulings they issued in state proceedings. *Kircher*, 458 F. Supp. 2d at 446-48. The judicial defendants both moved to dismiss on grounds that included absolute judicial immunity and sent the plaintiff a safe harbor letter requesting that the plaintiff not pursue his claims. *See id.* at 446-48, 453. The plaintiff continued to pursue his claims, arguing in opposition—as Plaintiff does here—that absolute judicial immunity did not bar his claims for injunctive relief. *See id.*

    The district court dismissed the plaintiff's claims and awarded the judicial defendants Rule 11 sanctions. *See id.* In so doing, the court pointed out that "a simple review of the plain language of § 1983 as amended ***ten years ago*** reveal[ed] the utter lack of merit in" the plaintiff's "contention" that absolute judicial immunity did not bar his claims for injunctive relief. *Id.* at 455 (emphasis in the

---

[10] The court ultimately awarded the moving defendants $19,643.95 in attorney's fees and costs as a sanction. *Bletas v. Deluca*, 2013 U.S. Dist. LEXIS 103592, at *13 (S.D.N.Y. July 18, 2013).

original). By "'ignor[ing] rather than acknowledg[ing] the force of existing law,' Plaintiff's counsel c[ould] hardly be said to have engaged in an 'effort to alter the law' as permitted under Rule 11." *Id.* (quoting *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987)). "To the contrary, Plaintiff's counsel adopted the 'ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist.'" *Id.* (quoting *Szabo Food Service*, 823 F.2d at 1081). That "r[an] directly counter to the obligation imposed upon an attorney under Rule 11(b)(2)" and warranted sanctions. *Id.*

The *Kircher* court's logic applies with even greater force here. Unlike the attorney in *Kircher*, Plaintiff is clearly pursuing damages claims—which absolute judicial immunity plainly bars; it is "well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999).

In further contrast to the attorney in *Kirchner*, Plaintiff did not even properly plead claims for injunctive relief in her Complaint. As discussed above and in Defendant's earlier briefing, Plaintiff's Prayer for Relief requests compensatory damages, punitive damages, and attorney's fees. *Compl.* p. 6. It also includes a demand for "such other relief, together with any other legal or equitable relief, or both, as the Court deems just and proper." *See id.* Even if Plaintiff were a non-attorney *pro se* entitled to "all the special solicitude" that status affords (she is not), Plaintiff's generic prayer for "other" relief would have been "insufficient to invoke

22

the exception for prospective injunctive relief to sovereign immunity under the *Ex [p]arte Young* doctrine.” *LeVine v. New York State Police*, 2022 U.S. Dist. LEXIS 173677, at *32 (N.D.N.Y. Sep. 26, 2022) (quotation marks omitted); *see also Moore v. Connecticut Dept. of Correction*, 2015 U.S. Dist. LEXIS 22058, at *5 (D. Conn. Feb. 24, 2015) (Meyer, J.) (finding that a generic prayer for equitable relief did not properly invoke the *Ex parte Young* exception in a counseled case, dismissing the plaintiff’s claims on Eleventh Amendment grounds, and citing similar cases); *Emmons v. City University of New York*, 715 F. Supp. 2d 394, 407 (E.D.N.Y. 2010) (finding that “the *Young* exception [wa]s not supportable” based on a complaint’s generic claim for relief similar to Plaintiff’s and rejecting the plaintiff’s “attempts to shunt her claims into the ambit of *Young*” in her opposition to the motion to dismiss); *Kinney v. Connecticut*, 622 F. Supp. 2d 1, 10 n.3 (D. Conn. 2009) (Squatrito, J.) (finding that non-specific “equitable” language in a complaint was not sufficient to invoke *Ex parte Young*); *Makas v. Orlando*, 2008 U.S. Dist. LEXIS 37321, at *15 (S.D.N.Y. May 6, 2008) (similar).[11]

Instead, Plaintiff tried to invoke *Ex parte Young* for the first time in her Objection in an effort to rebut Defendant’s judicial immunity argument. That would not allow Plaintiff to avoid sanctions even if her argument had merit—an attorney cannot use “*post hoc* sleight of hand” to obscure her failure to perform the pre-filing inquiry Rule 11 requires. *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989) (quotation marks omitted) (affirming the district

---

[11] *See also MIS MTD*, p. 7 n.1 (citing cases for the proposition that a generic prayer for relief fails to trigger *Ex Parte Young*); *RIS*, pp. 7-9 (similar).

court's imposition of Rule 11 sanctions were the plaintiff made a jurisdictional argument that was foreclosed by Second Circuit precedent). "Pleadings, motions, and other papers must be justifiable at the time they are signed; this Court will not countenance belated rationalizations concocted to conceal chicanery." *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991).

In any event, Plaintiff's belated argument utterly lacked merit. Even if this Court were inclined to overlook Plaintiff's failure to properly plead injunctive claims (it should not), it has now been over ***twenty four years*** since the amendment to § 1983 that revealed "the utter lack of merit in" Plaintiff's argument. *Kircher*, 458 F. Supp. 2d at 455. That utter lack of merit was not (or at least should not have been) a surprise to Plaintiff. Undersigned counsel anticipated Plaintiff's gambit of improperly attempting to re-write her Complaint in her Objection to the Motion to Dismiss by arguing that she was actually seeking injunctive relief in addition to damages. In an effort to discourage Plaintiff from attempting such a transparent and frivolous gambit, the Safe Harbor Materials explicitly pointed out to Plaintiff that § 1983 would bar any "claims for injunctive relief" Plaintiff belatedly tried to assert. *Contingent Motion*, ¶ 4(d) (A-7). They also pointed out to Plaintiff that the Eleventh Amendment and the *Younger* abstention doctrine would independently bar any such claims. *See id*. at ¶¶ 4(b) and 4(c). Plaintiff made the frivolous argument anyway.[12]

---

[12] Notably, Plaintiff did not respond to Defendant's *Younger* abstention argument at all. *See RIS*, p. 8. To the extent Plaintiff discussed the Eleventh Amendment, her

Plaintiff has employed—and continued to employ—the ostrich approach to the binding authority cited first in the Safe Harbor Materials and later in Defendant's Motion to Dismiss materials. *See Kircher*, 458 F. Supp. 2d at 455. That warrants sanctions. *See, e.g.*, *International Shipping Co., S.A.*, 875 F.2d at 392 (affirming the imposition of Rule 11 sanctions where plaintiff's counsel continued to pursue an argument even "after opposing counsel's extended discussion of the controlling cases"). Plaintiff's claims are frivolous by any reasonable standard. *Cf. Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) (characterizing "[a]ny claim dismissed on the ground of absolute judicial immunity [a]s 'frivolous' for purposes of 28 U.S.C. § 1915(g)").

"[T]his very case is illustrative of why [absolute judicial] immunity is necessary. A judge's 'errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.'" *Polur*, 1995 U.S. Dist. LEXIS 5143, at *13 (quoting *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988)). Rule 11 sanctions are not only appropriate but important to the proper functioning of our system of justice where—as here—an attorney disciplined by state courts persists in pursuing federal court litigation against those who disciplined them; it should be "clear to" this Court that Plaintiff's Complaint was pursued "in clear violation of" Rule 11's requirements that pleadings not be brought for an "'improper purpose, such as to harass'" and have support in "

---

argument did not meaningfully address its impact on any declaratory or injunctive claims Plaintiff claimed to assert. *See id.*

'existing law'" or "'nonfrivolous'" arguments for change of that law. *Id*. at *15-16

(quoting Fed. R. Civ. P. 11).

### 3. The Additional Grounds Raised in the Safe Harbor Materials Further Support Sanctions

In addition to informing Plaintiff of the Eleventh Amendment and absolute

judicial immunity defects that barred her claims in their entirety, the Safe Harbor

Materials informed Plaintiff of multiple other legal and factual defects in Plaintiff's

Complaint. *See Contingent Motion*, ¶¶ 4(c), 4(e), 4(i), and 4(j) (A-7-9) (pointing out

that the *Younger* abstention doctrine would bar any non-monetary claims Plaintiff

tried to assert, that Defendant was not a "person" for purposes of § 1983, that

Plaintiff's allegation of summary disbarment had and would have no factual

support, and that Supreme Court precedent bars Plaintiff's demand for attorney's

fees). Plaintiff did not meaningfully address any of those issues in her Objection to

Defendant's Motion to Dismiss. *See generally RIS MTD*.

That further supports an award of sanctions. The reasons why Plaintiff's

legal arguments warrant sanctions are covered in the existing briefing and will not

be repeated here. Plaintiff's factual allegations that she was summarily disbarred

warrant Rule 11(b)(3) sanctions for two reasons. *See Compl.*, ¶¶ 2-3, 9-10, 12; *see

also* Fed. R. Civ. P. 11(b)(3) (providing that by signing a pleading, the signer

certifies that "the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery"). First, this Court can take judicial notice that

there was, in fact, a disciplinary hearing before Plaintiff's disbarment. And, second,

Plaintiff herself is affirmatively arguing before the Connecticut Appellate Court that she was not summarily disbarred. Specifically, Plaintiff explicitly and repeatedly argues that Defendant "**did not exercise summary discipline but scheduled a hearing.**" *Brief of Plaintiff in Error Nickola Cunha in Ambrose v. Ambrose A.C. 45424*, p. 12 (A-22) (emphasis added); *see id*. at 20 (A-23) ("The trial court did not summarily discipline Ms. Cunha after the hearing on the motion to recuse Judge Adelman."). "[N]o competent attorney could believe, after reasonable inquiry," that Plaintiff's allegations that she was summarily disbarred were "well-grounded in fact" and Plaintiff therefore "violate[d] Rule 11" by asserting them and maintaining them. *Goldman v. Barrett*, 825 F. App'x 35, 37 (2d Cir. 2020) (Summary Order) (affirming the imposition of a $10,000 Rule 11 sanction on an attorney who unreasonably made and maintained factual allegations).

The Court should note that Defendant did not include the *Rooker-Feldman* argument raised in Defendant's Motion to Dismiss in the Safe Harbor Materials. That was deliberate. Although as set forth in Defendant's earlier briefing the Second Circuit precedent in place at that time "'strongly suggested'" that the *Rooker-Feldman* doctrine would bar this action despite Plaintiff's pending writ of error, Defendant believed there would be a good faith basis to argue that it would not. *Defendant's Notice of Supplemental Authority Relevant to the Pending Motion to Dismiss*, p. 1 (ECF No. 20) (quoting *Butcher v. Wendt*, 975 F.3d 236, 244 n.5 (2d Cir. 2020)). Therefore, Defendant did not reference the *Rooker-Feldman* doctrine in the Safe Harbor Materials.

Since then, the Second Circuit held—contrary to its proper strong suggestions—that the *Rooker-Feldman* doctrine does not apply where the federal plaintiff has a pending state court appeal. *See id.* (discussing *Hunter v. McMahon*, ___ F.4th ___, 2023 U.S. App. LEXIS 18565 (2d Cir. July 21, 2023)). That in no way impacts this Motion. Plaintiff would have had a good faith basis to argue that the *Rooker-Feldman* doctrine did not bar her claims.[13] But Plaintiff had—and has—no basis to avoid the conclusion that the myriad issues Defendant identified in the Safe Harbor Materials establish that Plaintiff violated Rule 11.

### C. The Record Indicates that this is an Unfounded Spite Action Brought by a *Pro Se* Attorney and that Makes Sanctions Particularly Appropriate

Plaintiff brought this action seeking official capacity and individual capacity damages from the state Judge who ordered Plaintiff disbarred. "Plaintiff's complaint was entirely frivolous, and the record shows that it was made as part of a conscious effort to harass" Defendant because Defendant performed his judicial duties under Connecticut law. *Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986). "Courts look with disfavor on this sort of unfounded spite action." *Id.* "When the litigant is an attorney sanctions are particularly appropriate and are expressly authorized under Rule 11." *Id.* (citation to *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980), omitted).

---

[13] To be clear, Plaintiff did not make the good faith argument later adopted by the Second Circuit even though—in the interest of candor—Defendant flagged the issue in his initial Memorandum. *See MIS MTD*, p. 10 and n.3. Instead, Plaintiff made an argument that ignored a dispositive aspect of the other Second Circuit precedent she relied on erroneously. *See RIS*, pp. 9-10.

Sanctions are "particularly appropriate" here. *Id*. The ruling at issue arose out of a state family court proceeding and involved attorney discipline. Judges hearing family and related matters "are entitled to the same protections from harassment and intimidation resulting from actions taken in their judicial capacity as those afforded to other state and federal judges." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 524 (E.D.N.Y. 2010). Indeed, "[g]iven the inherently emotional nature of their work, family court judges may be particularly susceptible to harassment." *Id*. Attorney disciplinary matters are likewise emotional.

"Without insulation from liability, judges would be subject to harassment and intimidation and would thus 'lose that independence without which no judiciary can either be respectable or useful.'" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quoting *Butz v. Economou*, 438 U.S. 478, 509 (1978)). Plaintiff—a *pro se* attorney— continues to attack a Judge for his judicial actions even after Plaintiff was repeatedly warned (first in the Safe Harbor Materials and later in the Motion to Dismiss materials) that her actions are unlawful. At no point has Plaintiff offered a coherent legal argument to support her actions. All indications are that this is an "unfounded spite action" and that sanctions are "particularly appropriate." *Fox*, 794 F.2d at 38; *see also Polur v. Murphy*, 1995 U.S. Dist. LEXIS 5143, at *13 (S.D.N.Y. Apr. 10, 1995). This Court should order sanctions here; "[t]he filing of meritless claims by experienced counsel has been found to give rise to a 'strong inference … [of] an improper purpose' in the Rule 11 context." *Colliton v. Cravath*, 2008 U.S. Dist. LEXIS 74388, at *40 n.11 (S.D.N.Y. Sep. 23, 2008) (quoting *Huettig &*

*Schromm, Inc. v. Landscape Contractors Council*, 582 F. Supp 1519, 1522 (N.D. Cal 1984), *aff'd*, 790 F.2d 1421 (9th Cir. 1986)). "Plainly," Plaintiff's "suit was 'presented for [an] improper purpose, such as to harass'" Defendant. *Madison v. Blount*, 2021 U.S. Dist. LEXIS 144734, at *10 (E.D. Mich. Aug. 3, 2021) (quoting Fed. R. Civ. P. 11(b)(1)) (awarding Rule 11 sanctions against an attorney who pursued claims barred by absolute judicial immunity).

## III.     Both Non-Monetary and Monetary Sanctions Are Appropriate

Courts faced with conduct similar to Plaintiff's have concluded that "where it is clear that" an "attorney should have known that there was absolutely no possibility of prevailing on the merits given the precedent against the claims, sanctions are necessary to deter such counsel from wasting the time and resources of the adversaries as well as of the court." *Cohen v. Bane*, 853 F. Sup. 620, 629 (E.D.N.Y. 1994). If this Court agrees that sanctions are appropriate, "[i]t remains only for the Court to determine what sanction would be 'sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'" *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 454 (E.D. Mich. 2006) (quoting Fed. R. Civ. P. 11(c)(2)). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Both non-monetary and monetary sanctions are appropriate here. Indeed, given the nature of Plaintiff's claims and that they are "barred on multiple grounds, including . . . the Eleventh Amendment" and judicial immunity, Defendant respectfully submits that it would be "unreasonable for the district court to deny relief under Rule 11." *Bethesda Lutheran Homes & Services v. Born*, 238 F.3d 853, 859 (7th Cir. 2001) (holding that the district court abused its discretion in denying the defendants—including state officials—relief under Rule 11).

### A. The Non-Monetary Sanctions of Dismissal with Prejudice, Requiring Plaintiff to Attend Continuing Legal Education and an Order Precluding Other Similar Filings without Leave of Court are Appropriate

As to non-monetary sanctions, if this Court agrees with Defendant that Plaintiff's Complaint should be dismissed, "[o]ne appropriate sanction" for Plaintiff's violations of Rule 11 "is the dismissal of" Plaintiff's "Complaint with prejudice." *Colliton v. Cravath*, 2008 U.S. Dist. LEXIS 74388, at *42 (S.D.N.Y. Sep. 23, 2008). "[T]his sanction under Rule 11 serves as an alternative ground for dismissal." *Id.* at *42-43 (citing A*bdelhamid v. Altria Group, Inc.*, 515 F.Supp.2d 384, 400 (S.D.N.Y. 2007)). Defendant requests that here. Other appropriate sanctions include requiring the offending attorney to attend "continuing legal education" and sending "a referral for disciplinary proceedings to" the relevant authority. *King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023) (affirming a district court's decision requiring the sanctioned attorneys to attend 12 hours of continuing legal education and referring them for

discipline, in addition to requiring them to pay monetary sanctions).[14] Both would be appropriate here.

Defendant also requests that this Court enter "an order enjoining the plaintiff from filing further actions in the federal district court[ ] of" Connecticut against Defendant or other Judges or Justices involved in Plaintiff's state court disciplinary proceedings "without leave of the Court." *Iwachiw v. New York City Board of Elections*, 217 F. Supp. 2d 374, 382 (E.D.N.Y. 2002). Such an order would be appropriate "to protect" Defendant and other state judicial officers "from vexatious litigation and harassment." *Id.* at 382-83.[15]

### B. A Monetary Sanction of Attorney's Fees is Appropriate

Defendant also requests monetary sanctions. "[W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated" and the party moving for Rule 11 sanctions should be awarded reasonable attorney's fees upon request. *Eastway Construction Corp. v. New York*, 762 F.2d 243, 254 (2d Cir. 1985), *superseded on other grounds by Fed. R. Civ. P. 11, as recognized in Sorenson v. Wolfson*, 683 F.

---

[14] Requiring Plaintiff to attend continuing legal education and referring her actions to disciplinary authorities is appropriate given both that Plaintiff is presently seeking appellate review of her current disbarment and that her disbarment is not permanent.

[15] Indeed, such an order would be appropriate even if this Court found that Plaintiff should not be sanctioned under Rule 11. *See, e.g.*, *Iwachiw*, 217 F. Supp. 2d at 382 (requiring that the plaintiff obtain leave of court before filing even while finding that the plaintiff's conduct was not sanctionable at that time).

App'x 33 (2d Cir. 2017) ("*Eastway*").[16] *Eastway* is instructive. There, the plaintiff general contracting firm brought a federal suit alleging that a municipality violated federal civil rights and antitrust laws by denying the plaintiff access to municipal projects after having lost a challenge in the state courts. *See id*. at 245. The district court granted summary judgment in the municipality's favor but denied the municipality's request for attorney's fees under *inter alia* Rule 11, finding that the plaintiff's claim was not frivolous. *See id*. at 248-49.

The Second Circuit reversed the district court's denial of fees, holding that it was an abuse of discretion. *See id*. at 251-53. The Second Circuit disagreed with the district court's conclusion that the plaintiff's antitrust claims were not frivolous for Rule 11 purposes, finding that they were "destined to fail" and that "a competent attorney, after reasonable inquiry, would have had to reach the same conclusion." *Id*. at 254. Given that, "it was error for the district court to deny the municipal defendants' motion for attorneys' fees incurred in defending against the antitrust claim." *Id*. Therefore, the Second Circuit remanded and required the district court to "impose appropriate sanctions against the" plaintiffs, "which shall include an order to pay the municipal defendants the amount of the reasonable expenses incurred by them in defending the antitrust claim, including a reasonable attorney's fee." *Id*.

---

[16] To the extent *Eastway* held that sanctions were mandatory when any Rule 11 violation was found, it has been superseded by later amendments to Rule 11 that provide that "'sanctions under Rule 11 are discretionary, not mandatory.'" *Sorenson*, 683 F. App'x at 35 (2d Cir. 2017) (quoting *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)).

The Second Circuit's logic in *Eastway* supports an award of attorney's fees here. Plaintiff's claims and arguments are even more clearly frivolous than those at issue in *Eastway*. Regardless of whether Plaintiff "acted in subjective bad faith in bringing or maintaining this lawsuit" with an "actual motive . . . to harass" Defendant (as the record indicates), or whether Plaintiff was "acting out of frustration or desperation," a Rule 11 award of attorney's fees is warranted. *Id*. Rule 11 exists "to punish . . . those who would manipulate the federal court system for ends inimicable to those for which it was created." *Id*.

If this Court agrees that an award of attorney's fees is appropriate, "[i]t remains only for the Court to determine what sanction would be 'sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'" *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 454 (E.D. Mich. 2006) (quoting Fed. R. Civ. P. 11(c)(2)). In *Kircher*, the court found "that the Judicial Defendants should be awarded an amount equal to the fees and expenses they reasonably incurred as a result of Plaintiff's violation." *See id*. (citing Fed. R. Civ. P. 11(c)(2)). Given the clarity of the law surrounding absolute judicial immunity, the court found that "it should have been evident to Plaintiff's counsel from the inception of this case that Plaintiff's claims against the Judicial Defendants were barred by judicial immunity." *Id*.   As a result, "the Judicial Defendants [we]re entitled to recover the entirety of the attorney fees and expenses they reasonably incurred in defending against the claims asserted in this case." *Id*. Here, that would include fees for the time Defendant's counsel expended in preparing the Safe Harbor Materials, the

Motion to Dismiss and related materials, and this Motion and related materials (as well as in preparing for and presenting any oral arguments that may be necessary).[17]

If this Court concludes that such an award is appropriate, Defendant respectfully requests that the Court make clear the materials for which Defendant may recover attorney's fees and allow Defendant's counsel thirty days in which to file a Declaration that sets forth "the number of hours reasonably expended by" Defendant's counsel in creating those materials "multiplied by a reasonable hourly fee." *Collins v. Unified Court System of New York*, 1991 U.S. Dist. LEXIS 8521, at *5-6 (N.D.N.Y. June 14, 1991).

### C. A Monetary Penalty is Appropriate

"Rule 11 allows for the award of a monetary penalty" separate from any award of attorney's fees "as appropriate to deter misconduct." *Doe v. Avon Old Farms School, Inc.*, 2023 U.S. Dist. LEXIS 56152, at *63 (D. Conn. Mar. 31, 2023) (Meyer, J.) (awarding attorney's fees and ordering a monetary penalty). "Deterrence is an important concern here" given that Plaintiff has continued to pursue this

---

[17] Defendant respectfully submits that at a minimum this Court should award attorney's fees for the time spent researching and drafting the Safe Harbor Materials as well as this Motion and related materials (and any related oral arguments) given that those materials were most directly related to Plaintiff's sanctionable conduct. *See, e.g.*, *Doe v. Avon Old Farms School, Inc.*, 2023 U.S. Dist. LEXIS 56152, at *63-64 (D. Conn. Mar. 31, 2023) (Meyer, J.) (requiring the sanctioned attorney to "pay the legal fees that" the opposing party "incurred in serving as well as briefing and arguing the motion for Rule 11 sanctions" as well as a separate monetary penalty); *see also King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023) ("The time, effort, and money a party must spend to get another party sanctioned realistically is part of the harm caused by that other party's wrongful conduct." (quotation marks omitted)).

frivolous action in an apparent effort to punish and harass Defendant for having ruled against Plaintiff in an attorney discipline matter. *Id*. Therefore, Defendant respectfully requests that this Court consider imposing a monetary penalty payable to the Court in an amount it considers appropriate to deter future misconduct by Plaintiff and others who may be inclined—absent a clear message from this Court— to engage in conduct similar to Plaintiff's. *See id*. (ordering an attorney who violated Rule 11 to pay a $1,000 monetary penalty to the Court in addition to attorney's fees to the opposing party).

## IV.     Sanctions Are Also Warranted Pursuant to this Court's Inherent Authority

This Court's inherent authority provides an independent source of authority to sanction Plaintiff. Rule 11 does not "displace[ ]" this Court's "inherent power to impose sanctions for . . . bad-faith conduct" because this Court's "inherent power . . . is both broader and narrower than other means of imposing sanctions." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).[18] This Court's "inherent power extends to a full range of litigation abuses" and *inter alia* "fill[s] in the interstices" between other sources of authority. *Id*. Pursuant to that power, this Court can impose a range of sanctions, including—but not limited to—"dismissal of a lawsuit" and the "less severe sanction of an assessment of attorney's fees" that "represent[s] the entire cost of the litigation." *Id*. at 44-45, 46 (quotation marks omitted) (affirming an

---

[18] This Court's inherent power is not displaced even where—as here—this Court has authority to sanction Plaintiff under Rule 11. *See, e.g.*, *Chambers*, 501 U.S. at 50.

award of "attorney's fees and expenses totaling $ 996,644.65" pursuant to the district court's inherent authority).

In contrast to Rule 11 sanctions, inherent authority sanctions generally require this Court to find that Plaintiff acted in bad faith. *See id.* at 47. That standard is met here. "One type of bad faith conduct that is often deserving of sanction is a party's decision to prosecute a knowingly frivolous claim." *International Technologies Marketing v. Verint Systems*, 991 F.3d 361, 368 (2d Cir. 2021). The Court must make two findings to support sanctions based on such conduct: "first, that the challenged claim was without a colorable basis and, second, that the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Id.* (quotation marks omitted). The Court can make both findings in this case—as discussed above, Plaintiff's claims were plainly barred and the record indicates that they were motivated by an intent to harass Defendant. *See id.* at 367-69. Notably, where those two requirements are met, the Second Circuit has made clear that sanctions are warranted even if Plaintiff's conduct did not impede this Court's ability to adjudicate this case and Plaintiff's conduct was not repetitive. *See id.*; *see also Dubuc v. Green Oak Township*, 482 F. App'x 128, 133 (6th Cir. 2012) (Unpublished) (affirming the imposition of inherent authority sanctions where a *pro se* attorney brought baseless claims against an attorney who advised a township for "the bad-faith purpose of causing harassment and delay").

To be clear, a finding that Plaintiff acted in bad faith is not necessary for this Court to impose inherent authority sanctions. "In limited circumstances, a court

may use its inherent authority to sanction a party even in the absence of bad faith." *Laface v. Eastern Suffolk Boces*, 2019 U.S. Dist. LEXIS 165669, at \*13 (E.D.N.Y. Sep. 26, 2019) (citing cases, including *United States v. Seltzer*, 227 F.3d 36, 39-42 (2d Cir. 2000)). When an attorney is acting on behalf of a client in performing the potentially sanctionable conduct, a finding of bad faith is required. *See Setzer*, 227 F.3d at 42. By contrast, when the conduct at issue was "not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *Id*. Here, Plaintiff was representing herself rather than a separate client. Therefore, this is not a situation where a bad faith finding is necessary to ensure an attorney is not sanctioned "by reason of excesses in conduct of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client." *Id*. at 40. In addition, Plaintiff failed to perform her "responsibilities as an officer of the court" by *inter alia* failing to "fil[e] a timely response to" Defendant's Motion to Dismiss. *Palmer v. Simon's Agency, Inc.*, 833 F. App'x 838, 839 (2d Cir. 2020) (Summary Order); *see also RIS*, pp. 1-4 (discussing Plaintiff's failure to timely respond to Defendant's Motion to Dismiss). That supports an award of sanctions absent any finding of bad faith. *See Palmer*, 833 F. App'x at 839 (affirming a district court's award of inherent authority sanctions based on inter alia the sanctioned attorney's failure to file a timely opposition to a motion to dismiss).

**V.     Conclusion**

For the reasons set forth above and in Defendant's prior briefing, Defendant respectfully requests that this Court find that Plaintiff's conduct in this litigation warrants sanctions under Rule 11 and this Court's inherent authority and order Plaintiff to comply with both non-monetary and monetary sanctions.

Respectfully submitted,

DEFENDANT

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Robert J. Deichert*
Robert J. Deichert (ct24956)
Assistant Attorney General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
860-808-5347 (fax)
Robert.Deichert@ct.gov
*Attorney for Defendant*

39

**Certificate of Service**

I hereby certify that on August 11, 2023 a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

*/s/ Robert J. Deichert*
Robert J. Deichert
Assistant Attorney General

40