UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICKOLA CUNHA,<br>    *Plaintiff*,<br><br>    v.<br><br>THOMAS MOUKAWSHER,<br>*in his personal and official capacity*,<br>    *Defendant.* | No. 3:23-cv-37 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Nickola Cunha ("Plaintiff" or "Ms. Cunha") brings this *pro se* Complaint against Thomas Moukawsher ("Defendant" or "Judge Moukawsher") in his official and personal capacity.

Judge Moukawsher has moved to dismiss this Complaint in its entirety.

For the following reasons, the motion to dismiss is **GRANTED.**

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Factual Background**

Nickola Cunha is a disbarred attorney, and Judge Moukawsher is a Connecticut Superior Court Judge who allegedly disbarred her on January 25, 2022.[1] Complaint, ECF No. 1 (Jan. 9, 2023) ("Compl.") ¶ 2.

Ms. Cunha alleges Judge Moukawsher disbarred her "for cause of speech made in zealous advocacy for her client, being a violation of First, Fifth, and Fourteenth Amendment protections, while chilling expression and advocacy, a societal detriment; implicating Connecticut State government for inability to properly select, train, manage justices, to assure the

---

[1] Since the filing of this lawsuit, Judge Moukawsher appears to have retired from the bench. Michael Marciano, *Common Sense Over Formalism: Retiring Judge's New Book Has Parting Thoughts for CT*, CONNECTICUT LAW TRIBUNE (Oct. 2, 2023, 9:29 AM) https://www.law.com/ctlawtribune/2023/10/02/common-sense-over-formalism-retiring-judges-new-book-has-parting-thoughts-for-ct-judiciary/.

proper quality and administration of justice, misuse of federal funds notwithstanding." *Id.* Ms. Cunha also alleges that Judge Moukawsher acted with "absolute discretion in personal dislike of zealous advocacy" and that he "cit[ed] unconstitutional authority of practice rule 2-45, to summary [sic] disbar" her. *Id.* ¶ 9. Ms. Cunha claims "[t]he property interest in a law license demands due process invoked by Fourteenth Amendment, denying Moukawsher the combined roles of accuser, trier, judge, jury, and executioner, of one tyrant in a black robe." *Id.* ¶ 14.

Ms. Cunha seeks compensatory damages, declaratory judgment, injunctive relief, punitive damages, attorneys' fees, and other damages deemed just and proper under 42 USC §§ 1983, 1988 for First, Fifth, and Fourteenth Amendment violations and under 18 USC §242 for "criminal mischief[.]" *Id.* ¶ 4.

The events leading to Ms. Cunha's disbarment are described in an opinion by Judge Moukawsher. *See Ambrose v. Ambrose*, No. FBTFA196088163S, 2022 WL 620615, at *1 (Conn. Super. Ct. Jan. 25, 2022) ("[finding] that Ms. Cunha repeatedly pressed empty and malicious claims that Judge Gerard Adelman favored Jews, protected pedophiles, and discriminated against the disabled."). The state trial court found that,

> Ms. Cunha repeatedly claimed, starting on page 4 of the Exhibit A transcript that: "Judge Adelman also has a bias against anyone that is not of the Jewish faith." On that same page she claimed she was making this claim 'on a significant amount of information that has been sent to me over the last several weeks. And it's really disturbing." She said on the same page that her belief was 'a recent belief based on the enormous amount of information and evidence that's come to me." [ . . . ] Ms. Cunha had already alleged on page 15 that Judge Adelman was a "racketeer."

*Id.* at *1–2. When asked for the basis for her allegations, Ms. Cunha had,

> to admit that she didn't have the list she said she was just trying to pull up—the list showing Judge Adelman consistently favoring Jews over non-Jews. Indeed, Ms. Cunha finally gave up pretending after the court waited for a half an hour while she said she was "looking" for the list [ . . . ] When at last the break was over and

2

> the court returned to the topic of the list of cases where Judge Adelman and Judge Grossman allegedly favored Jews, Ms. Cunha's claim of "enormous amount of information and evidence" proved entirely false. By that time, her "enormous" claim had boiled down solely to the list of cases showing a pattern. But, at last, Ms. Cunha admitted the list she said existed in fact never existed.

*Id.* at *3. The court also found that Ms. Cunha lied about whether a report stated that the defendant had "absolutely" committed sexual assault against his children. *Id.* at *4 ("[T]he report absolutely did not include any conclusion from a multidisciplinary task [force team] that [the defendant] sexually abused his children. Ms. Cunha wasn't telling the truth about what was in it."). At a later disciplinary hearing, one held after finding that Ms. Cunha had lied, and in which she was "urged by the court to get her own lawyer, and . . . told in advance of the seriousness of the proceedings," *id.* at 8, Ms. Cunha stated:

> Your Honor has engaged in malfeasance, gross malfeasance, I will not be intimidated. I will not be harassed by this Court. I will remind this Court that your so-called historical writing Memorandum of Decision where you touch upon the history that it is, it is a joke, and it is pathetic, and you should be ashamed of yourself for subjecting myself to that type of rhetoric [ . . ] Frankly, Judge, I am ashamed to even be sitting before you[.]

*Id.* at *6. The court then concluded Ms. Cunha had violated at least seven rules in the Rules of Professional Conduct and issued an opinion disbarring her. *Id.* at *6–7. Ms. Cunha's Writ of

3

Error appealing her disbarment is currently pending at the State of Connecticut Appellate Court. *See* Mot. to Dismiss Appendix, ECF No. 12-2. (Apr. 24, 2023).

### B. Procedural History

On January 9, 2023, Ms. Cunha filed her Complaint. *See* Compl. ECF No. 1 (Jan. 9, 2023).

On April 24, 2023, Judge Moukawsher filed a Motion to Dismiss. *See* Mot. to Dismiss, ECF No. 12 (Apr. 24, 2023); Def.'s Mem. in Supp of Mot. to Dismiss, ECF No. 12-1 (April 24, 2023) ("Mem.").

On May 31, 2023, Ms. Cunha filed her memorandum in opposition to the motion to dismiss. *See* Mem. in Opp., ECF No. 18 (May 31, 2023) ("Opp.").

On June 14, 2023, Judge Moukawsher filed his reply. *See* Reply to Response, ECF No. 19 (Jun. 14, 2023) ("Reply").

## II.   STANDARD OF REVIEW

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

In every case, a court must determine whether it has subject matter jurisdiction. In evaluating a motion under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint," but need not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp.*

4

*v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A case is properly dismissed under Rule 12(b)(1) where the district court "lacks the statutory or constitutional power to adjudicate the case." *Morrison v. Nat'l Austl. Bank. Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

The burden to prove subject matter jurisdiction generally falls on the plaintiff, but where a "defendant official or government entity asserts the Eleventh Amendment as the basis of the 12(b)(1) motion, the burden falls to that entity to prove its entitlement to dismissal on the grounds of immunity from suit*." Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 573 (D. Conn. 2016) (internal quotation marks omitted) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006)).

**B.  Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

5

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 663–64 (citations omitted).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

6

### III. DISCUSSION

Judge Moukawsher has moved to dismiss the Complaint in its entirety under 12(b)(1) and 12(b)(6). Mem. at 1, arguing that (1) Eleventh Amendment immunity bars Plaintiff's official capacity claims, *id.* at 7; (2) absolute judicial immunity bars Plaintiffs individual capacity claims, *id.*; (3) the *Rooker-Feldman* doctrine deprives this Court subject matter jurisdiction and thus bars the entirety of Plaintiff's claims, *id.*; (4) he is not a person under Section 1983 and therefore cannot be sued in his official capacity, *id.* at 13; and (5) that Plaintiff cannot recover attorneys' fees because this is a *pro se* action. *Id.* at 15.

The Court will address each of these arguments.

#### A. Eleventh Amendment Immunity

"The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted); *Alabama v. Pugh*, 438 U.S. 781, 781 (1978) (per curiam) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."). And "it is difficult to think of a greater intrusion on state sovereignty than . . . a federal court instruct[ing] state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

In *Ex parte Young*, 209 U.S. 123, 128 (1908), however, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—not[ ]withstanding the Eleventh Amendment—for prospective

injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks omitted).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted); *see also State Empls. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("We are specifically required by *Ex parte Young* to examine whether there exists an ongoing violation of federal law.") (emphasis omitted); *Myers v. Semple*, No. 3:18-cv-505, 2018 WL 3553336, at *3 (D. Conn. July 23, 2018) ("[T]he *Ex parte Young* exception does not apply to declaratory relief against state officials in their official capacities when the relief relates only to past conduct and there is no ongoing violation of federal law.").

Judge Moukawsher argues that the Eleventh Amendment protects him in his official capacity as a state official against Ms. Cunha's suit for money damages. Mem. at 7.

Ms. Cunha argues that the Eleventh Amendment "does not warrant consideration by this court as it is flawed and wrongfully applied[.]" Opp. at 3. She argues that *Ex Parte Young*'s exception for prospective injunctive relief applies because "the defendant has and continues to act post judgement." *Id.* at 5.

The Court disagrees.

Eleventh Amendment immunity applies because Judge Moukawsher is a state official who was acting in his official capacity. *See Gollomp v. Spitzer*, 568 F.3d 355, 365–66 (2d Cir. 2009) ("[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."). *Ex*

8

*Parte Young*'s exception for prospective injunctive relief does not apply because Judge Moukawhser's issued an order disbarring Ms. Cunha on January 25, 2022. See *Ambrose v. Ambrose*, No. FBTFA196088163S, 2022 WL 620615, at *1 (Conn. Super. Ct. Jan. 25, 2022). Ms. Cunha has not alleged any "ex post facto orders" in her Complaint, and this Court has been unable to identify any such orders in either the state court or federal court proceedings. *See Ambrose v. Ambrose*, No. FBT-FA-19-6088163-S, 2022 WL 21749185 (Conn. Super. Ct. Apr. 26, 2022).

In any event, a state judge cannot be sued in her or his official capacity under § 1983. *See e.g. Cinotti*, 709 F. App'x at 41 ("To the extent [Plaintiff] seeks monetary relief against the state judge in his official capacity, her claims fail because he is not a 'person' within the meaning of § 1983.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Piorkowski v. Parziale*, No. 3:02CV00963 (GLG), 2003 WL 21037353, at *6 (D. Conn. May 7, 2003) ("States—- state officers, if sued in their official capacities for retrospective relief—- are immunized by the Eleventh Amendment from suits brought by private citizens in federal court and, in any event, are not 'persons' subject to suit under [section] 1983.") (quoting *K & A Radiological Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)).

Accordingly, Eleventh Amendment immunity protects Judge Moukawsher in his official capacity from Ms. Cunha's suit, and the claims against him will be dismissed on these grounds.

### B. Judicial Immunity

The doctrine of judicial immunity protects a judge from suits seeking money damages unless "(1) the actions giving rise to the suit were not taken in the judge's judicial capacity, or (2) the suit arises from actions taken by the judge in the complete absence of jurisdiction."

*Parmlee v. State Dep't of Revenue Servs.*, No. 3:98-cv-2021 (AHN), 1999 WL 305476, at *3 (D. Conn. Apr. 13, 1999); *see also Peia v. United States*, 152 F. Supp. 2d 226, 235 n.12 (D. Conn. 2001) ("Judicial immunity also provides an alternative basis, in addition to the United States not being a proper party to a civil RICO claim, to dismiss the civil RICO claim arising out of Judge Matz's conduct."). The Second Circuit has stated:

> Since the seventeenth century, the common law has immunized judges from damage claims arising out of their judicial acts. This doctrine was embraced by the Supreme Court in 1872 in *Bradley v. Fisher*[.][2] *Bradley* established as a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself . . . The cloak of immunity is not pierced by allegations of bad faith or malice, even though unfairness and injustice to a litigant may result on occasion . . . The Supreme Court has repeatedly reaffirmed these principles.

*Tucker v. Outwater*, 118 F.3d 930, 932–32 (2d Cir. 1997) (quotations and citations omitted). As a result "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability

---

[2] 80 U.S. 335 (1871).

only when he has acted in the 'clear absence of all jurisdiction,'" *Stump v. Sparkman*, 435 U.S. 349, 349 (1978) (citing *Bradley*, 80 U.S. at 336).

Judge Moukawsher argues that absolute judicial immunity protects him from Ms. Cunha's individual capacity claims because he was making a decision as a judge to disbar her. Mem. at 8–9.

Ms. Cunha argues that Judge Moukawsher was acting without jurisdiction and is therefore not entitled to judicial immunity. Opp. at 4.

The Court disagrees.

The Second Circuit has explicitly included disbarring an attorney as judicial act that is entitled to judicial immunity. *See Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("Actions that are judicial in nature include . . . disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case[.]") (citations omitted). Additionally, "courts have not only the supervisory power but also the duty and responsibility to disqualify counsel for unethical conduct prejudicial to his adversaries." *Ceramco, Inc. v. Lee Pharms.*, 510 F.2d 268, 271 (2d Cir. 1975).

As a result, because Judge Moukawsher performed a judicial act when he disbarred Ms. Cunha, he is entitled to judicial immunity for that act. *See Cinotti v. Adelman*, 709 F. App'x 39, 41 (2d Cir. 2017) ("To the extent [Plaintiff] seeks monetary relief against the state judge in his

individual capacity, her claims fail because he is protected by judicial immunity.") (citing *Mireles v. Waco*, 502 U.S. 9, 9–11 (1991) (per curiam)).

Accordingly, any claims against Judge Moukwasher in his individual capacity will be dismissed from this lawsuit on these grounds.

### C. The *Rooker-Feldman* doctrine

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). "The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998).

Specifically, the *Rooker-Feldman* doctrine "directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).

Defendant argues that "this case satisfies all four requirements." Mem. at 10. First, Plaintiff lost in state court and it entered judgment against her on February 8, 2022. *Id.* Second, the Plaintiff is complaining of the injury of being disbarred by the state court judgment. *Id.* at 11. Third, the Plaintiff is inviting this Court to review that judgment. *Id.* Fourth, judgment was

already entered against Plaintiff before she brought this federal suit against Judge Moukawsher. *Id*.

Plaintiff argues that the *Rooker-Feldman* doctrine does not apply because the second requirement is not met. Opp. at 4. She claims that the doctrine does not apply when the claim "speak[s] not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments." *Id*. at 18 (citing *Sung Cho v. City of New York*, 910 F.3d 639, 645-46 (2d Cir. 2018).

The Court disagrees.

Even if this Court had not planned to dismiss any claims against Judge Moukwasher in his individual capacity on judicial immunity grounds, this Court should decline to exercise jurisdiction over these claims under the *Rooker-Feldman* doctrine. Contrary to Plaintiff's argument that "the state court[] merely ratified rather than produced [her] injuries," *Sung Cho*, 910 F.3d at 646, the state court's order here, one disbarring her, produced her alleged injuries. *See Ramos v. Putnam Fam. Ct*., No. 15-CV-1443 (VAB), 2017 WL 3083727, at *2 (D. Conn. July 18, 2017) (explaining that the Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries cause[d] by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). The state court entered judgment against Plaintiff on February 8, 2022, Mem. at 10, and then Plaintiff brought her complaint on January 9, 2023. Compl. As a result, under the *Rooker-Feldman* doctrine, this Court "lack[s] jurisdiction to review state court decisions whether final or interlocutory in nature." *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995) ("A trial judge is required to take measures against unethical conduct occurring in connection with any proceeding before him. It is his duty and responsibility to disqualify counsel for unethical

...
conduct prejudicial to counsel's adversary. It was not the prerogative of the district court to pass upon the state judges' exercise of that duty in the instant case.").

Accordingly, even if judicial immunity did not apply, Plaintiff's claim against Judge Moukawsher in his individual capacity must be dismissed under the *Rooker-Feldman* doctrine.

### D. Attorneys' Fees in a *Pro Se* Action

The Supreme Court has held that *pro se* litigants who are attorneys cannot recover attorneys' fees under § 1988. *See Kay v. Ehrler*, 499 U.S. 432, 437 (1991) ("[W]e agree with the Court of Appeals that the overriding statutory concern is the interest in obtaining independent counsel for victims of civil rights violations.")

Defendant argues that "Supreme Court precedent requires dismissal of Plaintiff's demand for attorney's fees." Mem. at 15

Plaintiff does not address this argument.

The Court agrees with the Defendant.

Because Plaintiff has decided to represent herself, she is not entitled to attorneys' fees, even if she had prevailed, which she has not. *See Ehrler*, 499 U.S. at 438 ("A rule that authorizes awards of counsel fees to *pro se* litigants – even if limited to those who are members of the bar – would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case."); *see also Presnick v. Santoro*, 832 F. Supp. 521, 531–32 (D. Conn. 1993) ("plaintiff, though once a lawyer, might perhaps no longer be able to practice law in Connecticut [ . . . ] whatever plaintiff's current legal status, it is clear that if he were to prevail on

any of the claims advanced by the complaint, no award of attorney's fees would be appropriate.").

Accordingly, although not relevant in this case because Plaintiff has not prevailed, even if she had, any demand for attorneys' fees would have to be dismissed.

### E. Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied

when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)").

For the various reasons described above, Ms. Cunha's claims against Judge Moukawsher lack any discernible legal basis. Therefore, any attempt to cure these fatal defects would be futile. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

Accordingly, Ms. Cunha's Complaint will be dismissed without leave to amend.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED.**

Because granting leave to amend would be futile, this dismissal is **with prejudice**.

The Clerk of Court therefore is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 15th day of January, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE